PEOPLE, PLAINTIFF AND APPELLEE, *v.* CRUZ, DEFENDANT AND
APPELLANT.

## Appeal from the Second District Court of San Juan in a Prosecution for Voluntary Homicide.

No. 2059.—Decided May 29, 1924.

MURDER—EVIDENCE—CONCLUSION OF WITNESSES.—In a murder case when the con-
clusion of a witness about the death of the victim is followed by a detailed
statement of the facts on which it is based, the error in not striking out
the conclusion is not prejudicial.

ID.—ID.—It was held in this case that although the testimony of a detective
that he knew the defendant ''because this was not the first time he had to
do with him'' was clearly impertinent, yet the facts that no objection was
made to the question which prompted the answer, that the motion to strike
it out was rather vague and general and that all of the circumstances showed
that the verdict indicated sympathy rather than prejudice towards the de-
fendant, permit the conclusion that the error in not striking out the testi-
mony did not justify a reversal.

ID.—ID.—INSTRUCTIONS TO JURY.—It is not error for a judge, while instructing
the jury to comment upon the grave nature of the crime, when such com-
ments are general and refer only to the nature of the crime in itself and
not in relation to the defendant charged with its commission.

The facts are stated in the opinion.

*Mr. F. Cervoni* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Appellant was accused of murder, convicted of man-
slaughter, and assigns as error that:

1. The court refused to strike out that part of the testimony of
witness Rafael Igaravídez reciting that while officer Juan Fernán-
dez was trying to arrest Chuchú, the latter killed the policeman;

2. The court refused to strike out that part of the testimony of Rafael Igaravídez stating that Fernández was felled by a bullet;

3. The court refused to strike out that part of the testimony of Detective Inocencio Díaz to the effect that he had long known Chuchú as that was not the first time he had had to do with him;

4. The court overruled the motion of nonsuit submitted by the defence praying the court to acquit the defendant on the ground that the evidence adduced did not sustain the charge made against him;

5. The court, in its charge to the jury, said: "The offence under consideration is serious, the most serious that can be committed against the person, the crime of murder;"

6. The court charges: Here you have two kinds of evidence: Direct evidence . . . . and the circumstantial evidence of those who saw the wounded and the dead man; the testimony of the physician, of the captain, of the detective, who witnessed the flight of the assailant and the manner of his escape.

7. The defence has not offered any evidence and its arguments, as you have heard, tended to establish possibilities, an hypothesis of the innocence of the prisoner.

8. If you reach the conclusion that this man was there, in ambush, that is to say—hidden; that he saw the policemen coming; that he made ready to kill whoever might approach him, that he ambushed those policemen; if you reach that conclusion, if that conclusion is free of reasonable doubt, it will be your duty to find the defendant guilty of murder in the first degree.

9. The defence has suggested that certain instructions be included in the court's charges, which I shall do as to a number of them, and although I believe they have already been stated I shall nevertheless repeat them.

If the cause of the death is not satisfactorily proved to the jury the prisoner should be acquitted. . . . .

In this connection, it appears that the defence has attempted to establish the theory of the possibility of his death through another cause. You have heard the testimony of Dr. Rodríguez; he was cross-examined, he expressed his opinion, stated the exact spot where the deceased received the wound, described to you the anatomical structure of such section, named the arteries that almost superficially cross that region of the body. He certified to the death and the cause thereof. You heard his opinion and his testimony. If

you believe what he told you, if you believe that his death was caused by the wound as the opinion of the doctor would show and if you believe that Gómez inflicted the wound, it is your duty to return a verdict of guilty in the degree that you think proper, whether murder in the first or second degree or voluntary manslaughter.

The motion to strike the statement complained of in the first assignment was based on the ground that "the fact of death ought to be proved by better evidence." Then the witness was asked: "How was it that the accused killed the policeman?" to which the defense objected, that, the fact of the death not having been established, the inquiry as to the manner in which the same was accomplished was improper. Thereupon the prosecution offered the certificate of death which was admitted without objection.

The portion of the record immediately following this incident reads thus:

"The witness continued testifying that during that afternoon about the time he and the officers under him were attempting to capture Chuchú and after he arrested Candelario Rosado in a house near the spot where Fernández died, they heard several revolver shots and the witness saw Juan Fernández fall and a few moments later saw the defendant spring from the place where he was hidden and disappear. The witness says that Fernández fell from a bullet wound that he received. The defense asked that the answer be stricken and the court refused. The defense excepted. That just as soon as he saw Officer Fernández fall he ran to the place from which Chuchú had emerged in company with Inocencio Díaz and Candelario Rosado. There they found Corporal Juan Veintidós wounded and Fernández dead. That this occurred at Bayamón on uneven land; that he saw Chuchú Gómez at a moment when he dropped from the limb of a tree and vanished. He did not see the officer do anything to Chuchú. That the officer and the corporal went up the mountain, taking the pathway between two hills and the witness heard the shots, saw the policeman when he fell and later when he was dead."

If the conclusion in question be not a shorthand render-

ing of the details involved, then the error in refusing to grant the motion to strike was cured by prompt exposition of the facts on which the conclusion was based.

The error, if any, specified in the second assignment was equally harmless for similar reasons.

The question raised under the third assignment is not so free from doubt. The witness, after testifying to the shooting of the policeman by defendant, had already stated that he knew it was Jesús Cruz Gómez, because witness knew him and had seen him leave the house for the ridge fifteen minutes before witness reached the house. Then, after giving certain further details, the record recites that the witness:

"In answer to questions put by the *fiscal*, testified that he had long known Chuchú, since it was not the first time that he had to take cognizance of his doings. The defense moved to strike this last part of the statement or that part stating that it was not the first time he had had to do with Chuchú, because such a statement tended to create prejudice in the mind of the jury. The *fiscal* objected to the elimination, urging that the statements of the witness are explanatory of how he knew Chuchú, and the court overruled the objection. The defense took exception."

Such practice is not to be commended. While the pretext that the information thus elicited from a well known detective, a member of the Insular Police force, explains how the witness became acquainted with defendant is plausible enough perhaps to be regarded as an extenuating circumstance, the fact remains that there was no necessity whatever for any such explanation. The natural and logical effect, and the obvious tendency of such an insinuation, as pointed out by the defense, would be to prejudice the minds of the jury. Whether or not any actual impression was made is another matter.

The question was improper and should not have been put by the prosecuting attorney, who should have acquiesced at

once in the motion to strike the answer. Not having done so, the trial judge should have granted the motion, telling the jury to disregard the reference to previous investigations, and explaining to them that the defendant was not on trial for any offense other than the one stated in the indictment, that his character was not in issue, and was presumed to be good.

If there were any other circumstances in the record upon which to base a suspicion of actual prejudice, any serious doubt in the mind of this court with reference to the charge as given to the jury, or any other matter that might have influenced them improperly in returning a verdict of guilty, then the error here complained of would suffice to turn the scale and to justify a reversal.

But, on the other hand, no objection was made to the question that prompted the response afterward complained of, the motion to strike was rather vague and general, and no reply seems to have been made as to the suggestion of the *fiscal* as to the admissibility of the testimony. There is no basis in the record for the assertions of counsel, in the brief for appellant, as to the state of the popular mind; and the verdict of the jury, all things considered, indicates sympathy with the defendant rather than prejudice against him. The theory of the defense, and apparently the only available ground upon which any hope of acquittal might have been based, was the possibility, in itself extremely remote, that, in the absence of an autopsy, death might have resulted from some cause other than a wound inflicted by defendant.

No attempt was made by the prosecution to follow up the same line of inquiry, either in the examination of the detective or in that of any other witness. The testimony itself is at most a bare insinuation and, aside from the presumption of prejudice, if any, or the inference to be drawn

from the nature of the reference itself, there is nothing in the record to indicate actual prejudice. Indeed, as already intimated, all the circumstances point to a contrary conclusion.

We are constrained to hold, therefore, that the error complained of in the third assignment, standing as it does alone and unaided by any other aspect of the case, and in the face of circumstances pointing positively to an absence of actual prejudice, is not a sufficient ground for ordering a new trial.

The argument under the fourth assignment is that, in the absence of an autopsy, the evidence does not show beyond a reasonable doubt that the wound received by Fernández was not inflicted by a brother officer in the general fusillade referred to by one witness, nor, in any event, that death resulted from the wound. It will suffice to say that we are unable to concur in this view of the matter.

The answer to the fifth assignment may be found in *People* v. *Boria,* 12 P.R.R., 166, where this court held, to quote the syllabus, that:

"It is not an error for a judge, while instructing the jury, to comment upon the grave nature of the crime when such comments are general and refer only to the nature of the crime in itself, and not in relation with the defendant charged with the commission thereof."

The remaining assignments do not demand serious discussion. The charge, as a whole, was full and complete, fair and impartial, and not unfavorable or prejudicial to any substantial right of the defendant.

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Franco Soto concurred.